IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAWN CURTIS DONGES,

        Plaintiff,                    No. CIV S-09-0360 DAD P

    vs.

DON DURETT, et al.,                ORDER AND

        Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On September 23, 2010, defendant Flicker filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion, and defendant has filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on a second amended complaint against defendants Durett, Flicker, and Baker.[1] Therein, he complains about the following conditions of confinement at the Butte County Jail ("BCJ") that he allegedly experienced while incarcerated there as a pretrial

---

[1] Defendant Flicker is represented by attorneys with the Law Offices of Deems & Keller, LLP. Defendants Baker and Durett are represented by attorneys with the firm Trimble, Sherinian & Varanini and have also filed a motion for summary judgment which the court will address in separate findings and recommendations.

1

detainee. With respect to defendant Durett, plaintiff alleges that defendant Durett was aware that plaintiff suffered from chronic pain, but from December 3, 2008, to May 14, 2009, failed to provide him with adequate pain management or help him through his withdrawal from Methadone and Oxycodone.[2] According to the complaint, for two to three weeks plaintiff experienced extreme pain, vomiting, stomach ulcers, insomnia, and muscle cramps at the BCJ. Plaintiff also alleges that defendant Durett was aware that plaintiff suffered from AIDS but denied plaintiff AIDS medication while he was incarcerated at the BCJ, thereby shortening his life span and making him more susceptible to illness and infection. (Sec. Am. Compl. at 3.)

With respect to defendant Lt. Flicker, plaintiff alleges that defendant Flicker knew there was a temperature problem in K-Pod at the BCJ from December 3, 2008, to January 1, 2009, but took a month to fix that problem. According to plaintiff's complaint, temperatures in K-Pod ranged from 42 degrees to 98 degrees during the relevant time. Plaintiff alleges that he should not have been exposed to such extreme temperatures while incarcerated because he suffers from AIDS. (Sec. Am. Compl. at 3.)

Finally, with respect to defendant Dr. Baker, plaintiff alleges that defendant Baker was aware that plaintiff had a history of mental illness and had been released from a mental hospital just prior to his incarceration at the BCJ. Nonetheless, plaintiff alleges, defendant Baker failed to prescribe plaintiff the appropriate medication to keep him from having suicidal thoughts. According to the complaint, only after plaintiff attempted suicide twice while incarcerated at the BCJ and only thereafter did defendant Baker prescribe him medication. (Sec. Am. Compl. at 4.) Plaintiff alleges that even then, defendant Baker prescribed him the wrong medication. (Id.)

/////
/////

---

[2] It appears that defendant Durrett is a nurse practitioner and in that capacity was involved in plaintiff's care at the BCJ.

# SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

1 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
6 1436 (9th Cir. 1987).

7       In the endeavor to establish the existence of a factual dispute, the opposing party
8 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
9 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14       In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
17 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
26 /////

## OTHER APPLICABLE LEGAL STANDARDS

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Pretrial Detainees and the Fourteenth Amendment Due Process Clause

Although pretrial detainees are lawfully in state custody, they are not prisoners subject to punishment by the state and are entitled to protection under the Fourteenth Amendment Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979) (unlike sentenced inmates the state is not allowed to punish pretrial detainees and therefore the Due Process Clause applies). Cf. Jones v. Blanas, 393 F.3d 918, 933-35 (9th Cir. 2004) (the

1  Fourteenth Amendment standard applies to conditions of confinement when civil detainees have
2  not been convicted of a crime).

3  Under the Fourteenth Amendment Due Process Clause, the state may not impose
4  conditions of confinement on a pretrial detainee that inflict punishment.  See Clouthier v. County
5  of Contra Costa, 591 F.3d 1232 (9th Cir. 2010).  "The key question 'in determining whether
6  particular restrictions and conditions accompanying pretrial detention amount to punishment in
7  the constitutional sense of that word,' is whether the restrictions evince a punitive purpose or
8  intent."  Id. at 1242 (quoting Bell, 441 U.S. at 538-39).  The Supreme Court has explained
9  "punitive intent" in its Eighth Amendment jurisprudence.  To establish "cruel and unusual
10 punishment," a prisoner must show that objectively he suffered a sufficiently serious deprivation
11 and that subjectively each defendant had a culpable state of mind in allowing or causing the
12 plaintiff's deprivation to occur.  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298-99 (1991)).

13 **DEFENDANT FLICKER'S MOTION FOR SUMMARY JUDGMENT**

14 I. Defendant Flicker's Statement of Undisputed Facts and Evidence

15  The defendant's statement of undisputed facts is supported by citations to a
16 declaration signed under penalty of perjury by defendant Lt. Flicker.  It is also supported by
17 citations to a copy of a BCJ "Work Order," as well as a copy of plaintiff's grievance in which he
18 complained about the temperature in K-Pod and Sergeant O'Hair's response thereto.

19  The evidence submitted by defendant Flicker establishes the following.
20 Defendant Flicker is employed as a correctional lieutenant with the Butte County Sheriff's
21 Office.  His primary duties are supervising correctional sergeants and supervising the BCJ
22 administration unit.  The Butte County Facilities Services Department (and not BCJ staff or
23 employees) is responsible for and handles all of the maintenance, monitoring, and repairs at BCJ.
24 Defendant Flicker does not have any supervisory or management authority over any employees at
25 the Butte County Facilities Services Department.  (Def.'s SUDF 1-3, Flicker Decl.)
26 /////

1    Plaintiff has been an inmate at the BCJ on several occasions over the past ten
years. At all times relevant to the complaint, which primarily involves the month of December
2008, plaintiff was a pretrial detainee being held at the BCJ. During the month of December
2008, plaintiff was housed in the section of the jail called K-Pod. On December 18, 2008, a
report was made that the temperatures in K-Pod and J-Pod were running at approximately 85-90
degrees. Corrective action was taken immediately and the malfunction was repaired on the same
day. On December 30, 2008, a report was made that K-Pod and J-Pod temperatures were
registering an average temperature of 58 degrees. Corrective action was once again taken
immediately and the malfunction was repaired the same day. (Def.'s SUDF 4-6, Flicker Decl. &
Ex. A.)

On December 30, 2008, plaintiff submitted a grievance in which he complained
about the temperature in K-Pod. This was the only grievance submitted by plaintiff regarding the
temperature at the jail. In accordance with BCJ policy and procedure, an investigation was
conducted. On December 31, 2008, plaintiff was informed that the temperature issue had been
addressed and repaired and that the temperatures in K-Pod were now as they should be. (Def.'s
SUDF 7-8, Flicker Decl. & Exs. B-C.)

II. Defendant Flicker's Arguments

Defense counsel argues that under the undisputed facts of this case plaintiff
cannot establish that defendant Lt. Flicker deprived plaintiff of any constitutional rights.
Specifically, counsel contends that the undisputed evidence before the court establishes that
defendant Flicker was not involved in the heating/air conditioning at BCJ. In addition, counsel
contends that, while temperature problems may very well have caused plaintiff discomfort, the
United States Constitution does not mandate comfortable prisons. Finally, counsel contends that
defendant Flicker acknowledges that he was aware that there was a temperature problem at the
jail. However, counsel argues that there is no evidence that defendant Flicker was deliberately
indifferent to any substantial risk of serious harm to plaintiff. Rather, any problems with the

temperatures in the jail were addressed as soon as possible  (Defs.' Mem. of P. & A. at 5-7.)

III. Plaintiff's Opposition

In opposition to defendant Flicker's motion for summary judgment, plaintiff argues that the conditions at BCJ during the times in question were not merely uncomfortable. He contends that temperatures above 90 degrees for a week straight caused inmates to suffer from nausea, headaches, muscle spasms, and vomiting.  In addition, he contends that the temperatures below 55 degrees inside the jail caused inmates to shiver all night even while wearing two sweatshirts and using two blankets.  Plaintiff argues that combining extreme temperatures with the withdrawal symptoms he was suffering at the time was excruciating. Finally, plaintiff argues that defendant Flicker in fact chose to punish the prisoners in K-Pod with extreme temperatures and delayed notifying maintenance of those extreme temperatures intentionally in order to punish a few inmates.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1-4.)

IV. Defendant's Reply

In reply, defense counsel argues that plaintiff has not offered any evidence even suggesting that defendant Flicker had anything to do with the heating/air conditioning at BCJ. Counsel maintains that defendant Flicker was not involved in the control of the temperature at the jail but that, rather, the Butte County Facilities Services Department is responsible for maintenance, monitoring, and repairs.  Finally, counsel argues that even if defendant Flicker had control of the temperature at BCJ, plaintiff has offered no evidence demonstrating that the defendant acted with deliberate indifference to a substantial risk of serious harm to plaintiff. (Def.'s Reply at 1-3.)

**ANALYSIS**

Based on the evidence submitted in connection with the pending motion, the court finds that defendant Flicker has borne the initial responsibility of demonstrating that there is no genuine issue of material fact with respect to his involvement in plaintiff's alleged constitutional violations.  In this regard, the evidence before the court establishes the following.  The Butte

County Facilities Services Department is responsible for and addresses all of the maintenance, monitoring, and repairs at the BCJ.  Defendant Flicker, a correctional lieutenant, does not have any supervisory or management authority over any employees at the Butte County Facilities Services Department.  In December 2008, plaintiff was housed in the section of the jail called K-Pod.  On December 18, 2008, it was reported that temperatures in K-Pod were running at approximately 85-90 degrees.  Corrective action was taken and the malfunction was repaired on the same day.  On December 30, 2008, it was reported that K-Pod was registering an average temperature of 58 degrees.  Corrective action was once again taken and the malfunction was repaired the same day.  (Flicker Decl. & Ex. A.)

It is well established that there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. 362; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.  Thus, in this case the burden shifts to plaintiff to establish the existence of a genuine issue of material fact precluding summary judgment in defendant Flicker's favor.  As noted above, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

Here, the court has considered plaintiff's opposition to the pending motion for summary judgement and his second amended complaint.  On defendant's motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.  However, drawing all reasonable inferences in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to his Fourteenth Amendment claim against defendant Flicker.

/////

Specifically, plaintiff contends that defendant Lt. Flicker was aware of the temperature problem in K-Pod and intentionally delayed notifying maintenance in order to punish a few inmates. It is undisputed that defendant Flicker was made aware of the temperature problem in K-Pod. However, plaintiff has not submitted any evidence even suggesting that defendant Flicker was responsible for maintaining or fixing the temperature or that he intentionally delayed notifying jail maintenance of the problem as a form of punishment directed at jail inmates. In terms of evidence, plaintiff has merely submitted a copy of his jail grievance in which he complained about the temperature in K-Pod, together with a copy of Sergeant O'Hair's response explaining that the problem had been discovered, maintenance was notified, and the problem fixed as soon as possible. Plaintiff has also submitted a declaration signed by other inmates declaring that from December 18, 2008, to December 21, 2008, the temperatures in K-Pod "exceeded living standards." In that declaration, plaintiff quotes Correctional Officer Juanarena, who purportedly stated "Computer system fucked up or something" when asked why it was so hot and Correctional Officer Kengle who purportedly stated "It is 92 degrees F this morning" at 7:00 a.m. However, neither plaintiff's grievance, Sergeant O'Hair's response thereto, nor plaintiff's declaration demonstrate any actual connection or link between the actions or inaction of defendant Lt. Flicker and the deprivation alleged to have been suffered by plaintiff. See Monell, 436 U.S. 658; Rizzo, 423 U.S. 362; Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991). In other words, plaintiff has simply not submitted any evidence indicating that defendant Lt. Flicker was personally involved or otherwise causally connected to the extreme temperatures that plaintiff experienced in K-Pod. See Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . .").

Accordingly, for the reasons set forth above, the court concludes that defendant Flicker is entitled to summary judgment in his favor with respect to plaintiff's claims against him.

## CONCLUSION

IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign a United States District Judge to this action.

IT IS HEREBY RECOMMENDED that:

1. Defendant Flicker's September 23, 2010 motion for summary judgment (Doc. No. 42) be granted; and

2. Defendant Flicker be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 27, 2011.

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
dong0360.57Flicker

11